IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZACHEAUS OLANIYAN, as Special Administrator of the Estate of Balutife Olaniyan, deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 04 C 5827 |
| **CSX TRANSPORTATION, INC.,** and **ANTHONY STALL,** | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This memorandum opinion constitutes my findings of fact and conclusions of law in this case, in which jurisdiction is based on diversity of citizenship. The case was originally brought in the Circuit Court of Cook County, Illinois and removed by defendants. Plaintiff, the administrator of the estate of Bolutife Olaniyan, is a citizen of Illinois. Defendants, CSX Transportation, Inc. and Anthony Stall are citizens of Virginia and Ohio. The amount in controversy exceeds $75,000.

On September 14, 2003, Bolutife Olaniyan was five years and nine months old. He lived with his mother and sister in an apartment in East Chicago, Indiana. On that morning, a Sunday, he was sitting at the table eating breakfast and watching television when his mother and sister went to their rooms to get ready for church. Sometime later, which according to his sister was about five minutes after he had been left alone, his sister came out of her room and discovered that the door to the apartment was open and her brother was gone. She immediately notified her

mother, who was in the shower, and both of them went to look for him. According to the undisputed testimony, he had never wandered off on his own before.

The Olaniyan apartment was a short distance from railroad tracks. On that morning, Bolutife left his apartment and walked to the railroad tracks where he was hit and killed by a train operated by defendants. When the engineer (defendant Stall) and conductor saw Bolutife the train was between 360 and 720 feet away (the evidence on this point varied). Even at 720 feet away, the train reached Bolutife in 14 seconds. The train was traveling at a speed of 38 mph. The train had 50 or 51 cars and was 8,894 feet in length (approximately 1 ½ miles). Stopping time was at least 49.38 seconds and would have taken 1,376 feet with the application of the train's emergency brake according to the undisputed evidence of plaintiff's expert, Robert Tucker. If emergency brakes had been applied at 720 feet, the train would still have been traveling at a speed of 28 mph when it arrived at the spot where Bolutife was standing.

Plaintiff's expert, Richard Beale, testified that Bolutife could have been seen from Euclid Ave., 6000 feet away. This evidence was undisputed. Although defendants argue that it is inherently unbelievable that anyone could identify a child less than four feet tall (as the evidence showed) over a mile down the track, no witness said he could not have been seen at that distance. The conductor on the train also testified that on that morning he could see as far as the eye can see down the track. The question is not, at any rate, whether he could have been seen from over a mile away but whether he could have been seen from slightly more than 1,376 feet away, since the evidence was that the train could have stopped in that distance with the application of the emergency brake. I conclude from the various evidence that Bolutife had been on the tracks for at least two minutes when he was hit by the train. Therefore, he was on the track at the time the

train was this distance from him. Under the uncontradicted evidence, I conclude the engineer and conductor could have seen Bolutife if they had looked down the track at this point. The engineer and conductor presumably did not see Bolutife sooner than they did because they were busy watching various crossings and did not look further up the track until they reached, or passed, the crossing before the one at which Bolutife walked onto the tracks. The engineer did not attempt to slow the train once he saw Bolutife.

The principal issue is whether the defendants had a duty to have seen Bolutife, and to have immediately put on the emergency brake, at a time when the accident could have been prevented, that is, when the train was 1,376.32 feet away (which included reaction time) if the train was going 38 mph.[1] No one has disputed that Indiana law controls this issue. Analysis of the applicable law defining the duty of a railroad toward a trespasser begins with *Cleveland, C., C. & St. L. Ry. Co. v. Means,* 59 Ind. App. 383, 104 N.E. 785, 794 (Ind. App. 1914). In that case, the Indiana appellate court held that a railroad owes a duty of reasonable care, which includes the duty to discover the presence of a trespassing child if circumstances created "constructive knowledge of the probable presence of children on its tracks." The Seventh Circuit discussed Indiana law and the duty owed to a trespassing child in *Echevarria v. United States Steel Corp.*, 392 F.2d 885 (7th Cir. 1968). In that case the court considered the *Means* case and subsequent

---

[1] There was considerable evidence about whether the train engineer and conductor used the appropriate horn signals once they saw the child. The evidence was that they at least were continually sounding the horn at that point. Assuming for purposes of argument that they did not use the correct horn signal, the evidence is speculative as to whether a different signal would have caused this young child to be able to ascertain his danger and move in time. The evidence showed that he was standing and looking at the train. But the time he had to move was at most 14 seconds. While if the emergency brake had been applied at that time, it would have slowed the train, giving the child slightly longer to react, there is again no evidence that he would have moved in time.

Indiana cases on the subject and concluded that the Indiana test is that "[w]here the person could have reasonably anticipated that children might come into contact with the dangerous agency or instrumentality, and such contact is reasonably sure to inflict serious injury, such person should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact with the dangerous agency or instrumentality ...." *Id*. at 891. The Seventh Circuit affirmed a verdict in favor of a plaintiff involving a child who was injured after climbing on defendants' electrical transformer. The Indiana appellate court in a subsequent opinion agreed that the Seventh Circuit had accurately stated Indiana law. *Wozniczkaa v. McKean*, 144 Ind. App. 471, 247 N.E. 2d 215 (Ind. App. 1969).

In this case, another rule must also be considered in defining defendants' duty. Bolutife was hit by the train barely off the crossing of Baring Avenue and the train tracks. He apparently had walked down the sidewalk parallel to Baring Avenue to the tracks and stepped off the asphalt covering the actual crossing. The Indiana rule governing public crossings at railroad tracks is that "a railroad company ... is under a duty, in the operation of its trains over highway crossings, of using reasonable and ordinary care to avoid injury to travelers at and on highways which are intersected by its tracks." *Pitts burgh, C., C. & S.L.R. Co. v. Terrell,* 177 Ind. 447, 455 (Ind. 1911). *Accord, Pittsbugh, D., D & S.L.R. Co. V. Pence,* 185 Ind. 495, 502 (Ind. 1916) ("It is the duty of those running a locomoive engine to exercise ordinary care in looking ahead to discover persons or objects on the tracks at highway crossings, and to exercise like care to avoid accidents ....")

The evidence in this case showed that the impact location was in a residential area, in the middle of a series of public crossings. There was testimony that a pedestrian had crossed in front of the train just a short distance from the location where this accident occurred. Indisputably, defendants owed a duty to keep a lookout for anyone crossing Baring Avenue. It would not make sense to say they owed a duty to Bolutife if he stayed ten feet from where he was hit, but that they had no duty once this child stepped just beyond the paved area. I conclude that, at least in this case, in which Boluife, a five year old child, was essentially at the street crossing when he was hit, the defendants owed a duty to use reasonable and ordinary care to avoid hitting him.

The undisputed evidence in this case is that defendants could have seen Bolutife with sufficient time to have stopped without hitting him if they had looked down the tracks. Since I conclude that they owed him a duty to have kept a lookout, which they failed to do, defendants were negligent.

Defendants argue that even if I find that they were negligent in their actions toward Bolutife, his mother and sister were contributorily negligent in failing to supervise him. However, the undisputed evidence was that he had never before gone out of the apartment, that they were present in the apartment, and that they were not out of his sight for very long. I therefore find that they were not contributorily negligent.

Under Indiana law, IC 34-23-2-1, parents may recover for loss of services, loss of love and companionship and economic damages.[2] Damages for loss of love and companionship continue as long as either parent survives. Plaintiff submits (and there was no contrary evidence)

---

[2] Plaintiff argues that Illinois law should govern damages but my award would be the same under either law.

5

that the father's life expectancy at the time of trial was 27.l years and the mother's life expectancy was 32 years. I award plaintiff 1.85 million dollars in damages for loss of services, love and companionship.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 23, 2007